UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES LATCH,<br>Plaintiff,<br><br>v.<br><br>EL PASO CORPORATION,<br>EL PASO EXPLORATION AND<br>PRODUCTION COMPANY,<br>EL PASO CORPORATION AMENDED<br>AND RESTATED 2000 TRANSITION<br>SEVERANCE PAY PLAN, AND<br>PLAN ADMINISTRATOR OF THE EL<br>PASO CORPORATION AMENDED AND<br>RESTATED 2000 TRANSITION<br>SEVERANCE PAY PLAN<br>Defendants. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:06-CV-01470<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Amended Motion for Summary Judgment (Doc. No. 58) pursuant to Federal Rules of Civil Procedure 56, requesting that the Court grant judgment in their favor on all of Plaintiff's remaining claims.[1] The Defendants are El Paso Corporation ("El Paso"), El Paso Exploration and Production Company ("E&P"), the El Paso Corporation Amended and Restated 2000 Transition Severance Pay Plan (as Amended and Restated effective as of October 1, 2002) (the "Severance Plan" or the "Plan"), and the Plan Administrator of the El Paso Amended and Restated 2000 Transition Severance Pay Plan (as Amended and Restated effective as of October 1, 2002) (the "Plan Administrator" or the "Administrator"), referred to collectively as "Defendants."

---

[1] The Court has already granted summary judgment in favor of Defendants on Plaintiff's third, fourth, and seventh claims for relief. (Order, Doc. No. 53.) The instant motion requests judgment on Plaintiff's first, second, fifth, and sixth claims.

I.  APPLICABLE STANDARDS

A motion for summary judgment under Federal Rules of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

II. BACKGROUND

Because he is entitled to have the evidence viewed in this light, the following account is taken, almost exclusively, from the submissions of Plaintiff Charles Latch ("Latch").

Latch began his employment with E&P in January, 2001. His title was "Vice President, Drilling and Construction." He was employed with E&P for more than three years and was a "participant" and a "beneficiary" of the Severance Plan within the meaning of the Plan and applicable law. While with E&P, Latch participated in several meetings at which E&P managers discussed their reporting obligations with regard to the value of the company's oil and gas assets. In attendance at these meetings, in addition to Latch and others, were Rod Erskine, who was Latch's supervisor and the President of E&P at the time, and at least one representative from the

law department. Latch voiced his concerns about the E&P's reporting decisions at these meetings, but ultimately his positions did not prevail.

In 2004, E&P recorded a major restatement of its gas and oil reserves for the period 1999-2003. The revision to El Paso's reserves decreased the value of E&P oil and gas assets by $2.7 billion. The Securities and Exchange Commission ("SEC") conducted an investigation into the restatement. On April 30, 2004, Lisa Stewart, who was then the President of E&P, advised Latch that "because [he] was at the wrong place at the wrong time" his employment would be terminated immediately. Stewart acknowledged that Latch had not been part of the acts or omissions that led to the SEC's investigation. Latch claims that the SEC cleared him of any involvement.

On May 4, 2004, Stewart notified Latch that he was being terminated "for cause." On May 7, 2004, Latch received written notification that the "for cause" termination was based on an unspecified "violation of the Code of Conduct." In the same writing, Latch was informed that he would not be eligible to receive severance pay and other benefits under the Severance Plan. The Severance Plan states that "[a]n Eligible employee shall not be entitled to Severance Pay if . . . his or her employment is terminated by an Employer for cause (which shall include, but not be limited to . . . a violation of the Code of Conduct of the Company . . . )."

### III. DISCUSSION OF THE FOUR DISPUTED CLAIMS FOR RELIEF

#### A. Plaintiff's First Claim for Relief

In his first claim for relief, Latch seeks the benefits he alleges are due him under the terms of the Severance Plan. Specifically, he alleges that, as a result of the wrongful designation of his termination as "for cause," a designation applied by E&P and adopted after investigation

by the Plan Administrator, he was denied severance pay, health benefits, outplacement and paid time off benefits, and the full vesting of certain stock grants and options.

The Supreme Court has held that the Court's review of a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is *de novo* "unless the benefit plan expressly gives the Plan fiduciary discretionary authority to determine eligibility for benefits, or to construe the Plan's terms, in which cases the deferential abuse of discretion standard is appropriate." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In this case, there can be no doubt that the Severance Plan vests in the Plan Administrator sufficient discretion to meet the Supreme Court's exception. Section 6.1 of the Plan explicitly states that the Plan Administrator "will have the discretion to make any findings of fact needed in the administration of the Plan and will have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion he or she deems to be appropriate in his or her sole judgment." (Ex. 1, Defs.' Mot. Summ. J., Doc. No. 58, at EPLA0000343.) It is hard for the Court to imagine a broader grant of discretion.[2]

Determining the standard of review to be abuse of discretion does not end the inquiry into the deference the Court must give the Plan Administrator, however, for there is a twist. The Fifth Circuit has held that, where the Plan Administrator labors under a conflict of interest in making benefits decisions, the Court must apply a "sliding scale" approach to deference: the greater the conflict, the less deference will be paid to the Administrator's decision. *Vega v. Nat'l Life Ins. Servs. Co.*, 188 F.3d 287, 297 (5th Cir. 1999). In promulgating this standard, the *Vega* court explained:

---

[2] Moreover, the same section goes on to state that such interpretations and findings by the Plan Administrator, "if challenged in court . . . will be upheld unless clearly arbitrary or capricious." (Defs.' Mot. Summ. J., Ex. 1, at EPLA0000343.)

> The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be. Having said that, we note that we sympathize with the First Circuit's approach—our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end.

*Id.* Therefore, while the standard of review remains abuse of discretion no matter how conflicted the Plan Administrator may be, understanding the extent of the conflict is crucial to the Court's review, for it determines the amount of deference to be paid the Plan Administrator.

In this case, there is a genuine issue of material fact with respect to the extent of the Plan Administrator's alleged conflict of interest in adopting the "for cause" designation of Latch's termination and denying him benefits. Viewing the evidence in the light most favorable to Latch, the Plan Administrator appears to have been an employee of El Paso's human resources department when she made her decision to adopt E&P's "for cause" designation. Latch alleges such a conflict in his Response (Pl.'s Resp., Doc. No. 62, at 7), and that allegation is supported by the fact that the Plan Administrator's own letters are drafted on El Paso letterhead (*see, e.g.*, Ex. 27, Defs.' Mot. Summ. J., Doc. No. 58, at EPLA0000078), and the further fact that letters written to the Plan Administrator appear to be addressed to her at El Paso (*see, e.g.*, Ex. 13, Defs.' Mot. Summ. J., Doc. No. 58, at EPLA0000855). Moreover, in their Reply, Defendants do not appear to deny the conflict of interest alleged, but instead argue that the conflict is so minimal that the Court should give the Administrator only a modicum less deference than it otherwise would. (*See* Doc. No. 63, at 9-10.) Perhaps Defendants are right, but when the evidence is viewed in the light most favorable to Latch, it can reasonably be inferred that the Administrator's conflict was significant. Assuming, as we must, that the conflict was significant,

the Administrator is due little deference and, to decide whether her decision was arbitrary and capricious, the Court must review, at least to some extent, the evidence that was available to her at the time. As the parties' pleadings make clear, such a review would require taking evidence on many issues of material fact. These include, but are not limited to, the reasons for E&P's designation of Latch's termination as "for cause" and whether Latch's conduct violated El Paso's Code of Business Conduct. The extent of the Plan Administrator's conflict of interest is therefore an issue for trial.

In reaching this conclusion, the Court is mindful of the Fifth Circuit's reminder that an employer who administers its own plan is not *per se* conflicted. *See Maclachlan v. ExxonMobil Corp.*, 350 F.3d 472, 479 (5th Cir. 2003). The Fifth Circuit rightly points out that, generally,

> corporations that pay generous levels of benefits to their workers do so for self-interested reasons: Such benefits are one part of the total package of compensation that employers use to attract and retain capable workers. It is therefore less than patently obvious that employers would systematically benefit from a denial of meritorious claims.

*Id.* at 479 n.8. But the employment relationship between the Administrator and the employer is a factor for the Court to consider in determining the proper amount of deference, *id.* at 479, and it is one that lends itself well to the kinds of proof offered at trial. Moreover, both parties agree that Latch's termination occurred during a highly unusual time at El Paso, when the company appears to have been aggressive in reprimanding and terminating all employees who had been involved in the events leading to the restatement of the value of its oil and gas reserves. Given these circumstances and again viewing the evidence in the light most favorable to Latch, the Court can easily infer that the normal incentives to pay meritorious claims discussed in *Maclachlan* were absent, or at least materially altered, when Latch was terminated. El Paso was

likely not as concerned with employee retention as it might normally be, and as a result the need to treat departing employees fairly may well have been subsumed by more pressing objectives.

Insofar as Latch's first claim for relief requests damages relating to stock grants and options, however, the Court is obliged to grant Defendants' motion for summary judgment. In their motion, Defendants argue that the stock grants and options at issue were not benefits under the Severance Plan and were not related to the Severance Plan, and that the plan under which those grants and options were issued was not itself a plan covered by ERISA. (Defs.' Mot. Summ. J., Doc No. 58, at 22-25.) In support of their argument, Defendants offer the declaration of Alan Bishop, the Director of Shareholder Relations for El Paso, who states that Latch received the grants and options at issue under the Omnibus Plan for Management Employees ("Omnibus Plan"), not the Severance Plan. They quote the Omnibus Plan to show that its purpose is to furnish suitable recognition to those employees who contribute to the success of El Paso, and they offer a copy of that plan to show that it does not provide medical, unemployment, disability, death, vacation, or other benefits that would establish it as an employee welfare plan. Finally, they cite to two district court decisions that place stock option plans outside of the scope of ERISA, and also cite to *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574-76 (5th Cir. 1980), which uses an analysis very similar to Defendants' to declare that employee bonus plans, albeit not stock option plans *per se*, are outside the scope of ERISA.

Latch's Response does not address this argument. (*See* Pl.'s Resp., Doc No. 62.) Under Federal Rules of Civil Procedure 56(e), he is under an obligation to do so. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered

against the adverse party."). Because Defendants have adequately supported their argument, and because Latch has not responded, the Court finds that summary judgment for Defendants is appropriate with regard to Latch's request for damages relating to stock grants and options.

### B. Plaintiff's Second and Sixth Claims for Relief

In his second claim for relief, Latch seeks interest on the damages alleged in his first claim, and in his sixth claim for relief, Latch seeks the award of attorney's fees and costs. Because the Court has found that a genuine issue of material fact exists to defeat the granting of summary judgment on the first claim, Defendants' motion for summary judgment on Latch's second and sixth claims must also be denied.

### C. Plaintiff's Fifth Claim for Relief

In his fifth claim for relief, Latch seeks damages for Defendants' refusal to provide documents relating to the plan under which his stock grants and options were issued. Defendants argue that the Omnibus Plan is not an ERISA plan, and that therefore the award of penalties authorized by ERISA would be inappropriate. (Defs.' Mot. Summ. J., Doc. No. 58, at 23-25.) Latch has not responded to this argument. (*See* Pl.'s Resp., Doc. No. 62.) Because the Court accepted Defendants' argument that the Omnibus Plan is not an ERISA plan in its discussion of Latch's first claim, and because Latch has failed to respond to Defendants' argument as required by Federal Rules of Civil Procedure 56(e), summary judgment in favor of Defendants is appropriate.

## IV. LIABILITY OF THE NAMED DEFENDANTS

Defendants request summary judgment with respect to all claims against El Paso and E&P, arguing that only the plan is a proper defendant in a suit under 29 U.S.C. § 1132(a)(1)(B).

(Defs.' Mot. Summ. J., Doc. No. 58, at 21-22). The Fifth Circuit has not spoken on this proposition, and other circuits are divided as to whether non-plan parties that control the administration of the plan may also be sued. *See Lee v. Tyco Elecs. Power Sys., Inc.*, No. 3:04-CV-2260-D, 2006 WL 1722569, at *7 (N.D. Tex. June 20, 2006) (noting circuit split and collecting authorities). Defendants argue that El Paso and E&P are entitled to summary judgment with respect to all claims because Latch has provided no evidence that those entities exercise control over the administration of the Plan.

Again, Latch has failed to respond to this argument, and the Court is aware of no evidence in the summary judgment record that tends to show that either El Paso or E&P exercised control over the administration of the Plan at the time of Latch's termination. The closest Latch comes to providing such evidence is the evidence showing that the Plan Administrator operated under a conflict of interest when administering the plan. That evidence, however, at most shows the alignment of the Administrator's interests with those of El Paso and E&P. It does not show, or even suggest, that El Paso or E&P exercised any control over the administration of the Plan. Moreover, the language of the Plan formally vests all control over the administration of the Plan in the Administrator. (*See* Ex. 1, Defs.' Mot. Summ. J., Doc. No. 58, at EPLA0000343.) In the absence of contrary evidence, or even a contrary argument from Latch, the Court is obliged to grant summary judgment on all claims in favor of Defendants El Paso and E&P.

### V. CONCLUSION

For the reasons stated above, Defendants' Amended Motion for Summary Judgment (Doc. No. 58) is **GRANTED** with respect to Defendants El Paso and E&P on all claims,

**GRANTED** with respect to all Defendants on Latch's first claim insofar as he requests damages relating to stock grants and options, **GRANTED** with respect to all Defendants on Latch's fifth claim, and **DENIED** in all other respects.

**IT IS SO ORDERED.**

SIGNED this 28th day of January, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT